1
2
3
4
5
6
7
8
9
10
11
12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KAG WEST LLC,

                              Plaintiff,

        v.

FIREMAN'S FUND INDEMNITY
CORPORATION,

                              Defendant.

CASE NO. 3:24-cv-05806-BHS

ORDER

13
14
15
16
17
18
19
20

        This matter is before the Court on cross motions for summary judgment filed by

plaintiff KAG West, Dkt. 13, and defendant Fireman's Fund ("Allianz")[1], Dkt. 20.

        This is an insurance coverage dispute. Because Allianz failed in bad faith to

defend the underlying allegations against KAG, it is liable for KAG's reasonable

settlement of the underlying complaint. KAG's partial summary judgment motion, Dkt.

13, is granted, and Allianz's summary judgment motion, Dkt. 20, is denied.

21
22

_____

        [1] Allianz Commercial is an authorized representative of Fireman's Fund. Dkt. 1-1 at 4.
Because Fireman's Fund addresses itself as "Allianz" in its briefing, Dkts. 16 and 20, the Court
does the same in this Order for consistency and clarity.

# I.    BACKGROUND

KAG is a fuel transportation and logistics provider. Dkt. 1-1 at 3. KAG is headquartered in Ohio, but operates in several states, including Washington. It purchased environmental liability insurance from Allianz, effective April 2023 through 2024, to insure against the risk of storm water pollution. *Id.* at 18.

The policy covered clean-up costs "resulting from a pollution condition" on and off KAG's facility, where "clean-up costs" meant "reasonable and necessary expenses . . . for the investigation, removal, treatment, containment . . . of soil, surface water, groundwater, or other contamination," including "restoration costs." Dkt. 15-1 at 13–14, 42. The policy also covered losses incurred by "bodily injury or property damage resulting from a pollution condition," and defined "loss" as compensatory damages for the bodily injury or property damage, clean-up costs, and defense costs, among others. *Id.* at 15, 42.

The policy excluded losses arising from (1) KAG's liability under any contract, or agreement; (2) any "intentional or illegal act or omission"; (3) prior knowledge and non-disclosure of "a pollution condition existing prior to the inception date and known by a responsible insured and not disclosed in the application process . . . for this [p]olicy"; and (4) known claims or legal actions existing before the insurance period. *Id.* at 33–34, 45.

On August 18, 2023, Puget Soundkeeper Alliance sent KAG a Notice of Intent to Sue, alleging KAG had breached the terms of its National Pollutant Discharge Elimination System (NPDES) permit and violated the Clean Water Act. The letter was erroneously dated August 18, 2022. *Id.* at 94.

Soundkeeper sued KAG in this District in October 2023. Dkt. 15-2; *see Puget Soundkeeper Alliance v. KAG West LLC*, No. 3:23-cv-05949-TMC, Dkt. 1 (W.D. Wash. 2024). The complaint alleged that KAG's Tacoma facility discharged stormwater with pollutants into the Blair and Hylebos Waterways and then into Commencement Bay. Dkt. 15-2 at 7. It alleged that KAG failed to implement procedures to prevent, control, and treat its pollutant discharges, failed to collect and analyze quarterly stormwater discharge samples, and failed to "correctly and timely submit Discharge Monitoring Reports." *Id.* at 7–8. KAG's actions also allegedly violated the recordkeeping provisions of its NPDES permit. *Id.* at 9–11.

KAG tendered the defense to Allianz under its policy. Dkt. 1-1 at 4.

In February 2024, Allianz sent a letter with a reservation of rights to KAG. *Id.* at 106. The letter stated Allianz had "serious coverage concerns" in part because (based on Soundkeeper's misdated notice) it believed the incident pre-dated the insurance period, and the conduct fell under several policy exclusions. *Id.* at 120–23. However, the letter also concluded that there was "potentially coverage under the [p]olicy for loss associated with the claim." *Id.* at 123.

Nevertheless, in April 2024, Allianz formally denied the claim. Dkts. 15-4, 15-5. Allianz asserted it had learned through its investigation that KAG had a "long-term history of intentional non-compliance," and had settled prior sampling violation allegations in 2020. Dkt. 15-4 at 16. It also asserted that KAG's facility manager falsified discharge monitoring reports by claiming "there was no rain in the Tacoma, WA area for an entire quarter in one period to justify why no sampling was required." *Id.* at 4. Allianz

1    accordingly determined the Soundkeeper complaint fell under the policy's exclusions for

2    contractual liability, intentional noncompliance, and prior claim and knowledge. *Id.* at

3    16–17. It also concluded the policy did not cover Soundkeeper's claim for its attorneys'

4    fees because they were not compensatory and did not arise from bodily injury or property

5    damage. *Id.* at 17.

6          Allianz did not defend KAG from Soundkeeper's suit, and it did not seek a

7    declaratory judgment that it had no duty to defend. Wymer Decl., Dkt. 15 at 2. When

8    KAG inquired about whether it should pay the legal fees arising from that suit, Allianz

9    responded that it was "in the process of finalizing the coverage analysis," and "in the

10    event the policy is triggered, there is a deductible to be met." Graff Decl., Dkt. 14-6 at 2.

11          KAG and Soundkeeper settled the underlying case in August 2024. *See* No. 3:23-

12    cv-05949-TMC, Dkt. 17. As part of the consent decree, KAG agreed to pay $350,000 to

13    Puyallup Tribal Fisheries for salmon habitat restoration in Commencement Bay. Dkt. 15-

14    6.

15          KAG sued Allianz in Pierce County Superior Court, asserting breach of contract,

16    Insurance Fair Conduct Act (IFCA), Washington Consumer Protection Act (CPA), and

17    bad faith claims. Dkt. 1-1. Allianz removed the case to this Court on diversity grounds.

18    Dkt. 1.

19          KAG moves for partial summary judgment. Dkt. 13. It argues Allianz conceded

20    the policy conceivably covered the underlying Soundkeeper suit, and thus seeks a

21    determination that Allianz owed KAG a duty to defend under Washington law, and

22    breached that duty in bad faith by instead construing the policy in its own favor.

1    Allianz moves for summary judgment on all claims. Dkt. 20. It argues KAG

2  cannot prove compensable damages to support its claims. It asks the Court to apply Ohio

3  law to the dispute, under which KAG cannot succeed on any of its claims. It further

4  asserts KAG cannot demonstrate it suffered compensable damages due to Allianz's

5  alleged misconduct.

6    The issues are discussed in turn.

7               **II.   DISCUSSION**

8    Summary judgment is proper if the pleadings, the discovery and disclosure

9  materials on file, and any affidavits show that "there is no genuine dispute as to any

10  material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

11  56(a). In determining whether an issue of fact exists, the Court must view all evidence in

12  the light most favorable to the nonmoving party and draw all reasonable inferences in that

13  party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v.*

14  *Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where

15  there is sufficient evidence for a reasonable factfinder to find for the nonmoving party.

16  *Anderson*, 477 U.S. at 248.

17    On cross-motions, the defendant bears the burden of showing that there is no

18  evidence which supports an element essential of the plaintiff's claim. *Celotex Corp. v.*

19  *Catrett*, 477 U.S. 317, 322 (1986). Conversely, the plaintiff "must prove each essential

20  element by undisputed facts." *McNertney v. Marshall*, No. C-91-2605-DLJ, 1994 WL

21  118276, at *2 (N.D. Cal. Mar. 4, 1994) (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190,

22  1194 (5th Cir. 1986)). Either party may defeat summary judgment by showing there is a

genuine issue of material fact for trial. *Id.*; *Anderson*, 477 U.S. at 250. Although the parties may assert that there are no contested factual issues, this is ultimately the Court's responsibility to determine. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

**A.    Washington law applies to this case.**

Allianz contends Ohio insurance law applies because KAG is based in Ohio, and the insurance policy is broad and not directed at a particular state. Dkt. 16 at 18–21. Allianz specifically asks the Court to apply Ohio law to: (1) the consideration of extrinsic evidence in denying a defense; and (2) compensatory damages resulting from an insurer's bad faith conduct. *Id.* at 19, 33–34; Dkt. 20 at 7–8, 23.

A federal court sitting in diversity applies the forum state's choice-of-law rules. *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). Washington law requires the Court to determine if there is an "'actual conflict between the laws or interests of Washington and the laws or interests of another state'" before conducting a conflict of laws analysis. *Erwin v. Cotter Health Ctrs.*, 161 Wn.2d 676, 692 (2007) (quoting *Seizer v. Sessions*, 132 Wn.2d 642, 648 (1997)). Where the result would be different under the law of two states, there is a real conflict. *Id.* "Where laws or interests of concerned states do not conflict, the situation presents a false conflict and the presumptive local law is applied." *Id.* (internal quotation marks omitted).

**1.    Washington and Ohio law on the duty to defend does not conflict.**

In Washington, the duty to defend arises when an action is filed and is based on the potential for liability. *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52 (2007).

1   "Upon receipt of the complaint against its insured, the insurer is permitted to use the

2   'eight corners rule' to determine whether, on the face of the complaint and the insurance

3   policy, there is an issue of fact or law that could conceivably result in coverage under the

4   policy." *Xia v. ProBuilders Specialty Ins. Co*., 188 Wn.2d 171, 182 (2017) (citing

5   *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 803 (2014)). If the insurance policy

6   "*conceivably covers* the allegations in the complaint," the duty to defend is triggered.

7   *Woo*, 161 Wn.2d at 53.

8       "[I]f a complaint is ambiguous, a court will construe it liberally in favor of

9   triggering the insurer's duty to defend." *Woo*, 161 Wn.2d at 53. Although an insurer may

10  look outside the complaint if the allegations are contradictory or ambiguous, or if

11  coverage is unclear, the insurer may only rely on extrinsic facts to *trigger*—not deny—the

12  duty to defend. *Id.* at 54; *Grange Ins. Ass'n v. Roberts*, 179 Wn. App. 739, 752 (2013).

13      "Once the duty to defend attaches, insurers may not desert policyholders and allow

14  them to incur substantial legal costs while waiting for an indemnity determination."

15  *Truck Ins. Exch. v. Vanport Homes, Inc.*, 147 Wn.2d 751, 761 (2002). An insurer "unsure

16  of its obligation to defend in a given instance . . . may defend under a reservation of

17  rights while seeking a declaratory judgment that it has no duty to defend." *Id.* This way,

18  "'the insured receives the defense promised, and if coverage is found not to exist, the

19  insurer will not be obligated to pay.'" *Id.* (quoting *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d

20  558, 563 n.3 (1998)).

21      Ohio law imposes a similar presumptive duty to defend on insurers. "An insurer

22  has an absolute duty to defend an action when the complaint contains an allegation in any

one of its claims that could arguably be covered by the insurance policy." *Sharonville v. Am. Emps. Ins. Co.*, 846 N.E.2d 833, 837 (2006). Even when there is "some doubt" as to the scope of coverage, "the insurer must accept the defense of the claim." *Willoughby Hills v. Cincinnati Ins. Co.*, 459 N.E.2d 555, 558 (1984). If the policy "potentially or arguably" covers the allegations in the complaint, the court may consider extrinsic evidence to trigger the duty of defense. *Motorists Mut. Ins. Co. v. Natl. Dairy Herd Improvement Ass'n., Inc*, 750 N.E.2d 1169, 1176 (2001); *see Willoughby*, 459 N.E.2d at 557 (The duty to defend "may arise at a point subsequent to the filing of the complaint.").

A duty to defend triggered by potentially covered claims may terminate upon the insurer's review of extrinsic evidence. *Fireman's Fund Ins. Co. v. Hyster-Yale Grp., Inc.*, 135 N.E.3d 499, 506 (2019). Until then, the insurer must "appear and defend" the insured. *Id.* The "general rule" is that an insurer may "proceed under a reservation of rights where coverage questions exists, then withdraw its defense after correctly determining that the claim falls outside of the policy." *Id.* at 507.

The Court concludes there is no conflict between Washington and Ohio law on an insurer's duty to defend. Washington law is clear that the insurer "may not rely on facts extrinsic to the complaint to deny the duty to defend," but it may do so "to trigger the duty." *Woo*, 161 Wn.2d at 54. Ohio law similarly allows extrinsic evidence to "trigger[] the insurer's duty to defend" so long as the pleadings state a claim "potentially or arguably within the policy coverage." *Motorists*, 750 N.E.2d at 1176. Both states unequivocally require the insurer to "initially appear and defend" the insured when the

1    policy potentially—or conceivably—covers the allegations. *Hyster-Yale*, 135 N.E.3d at

2    506.  Washington law applies to this issue. *Erwin*, 161 Wn.2d at 692.

3           **2.**        **Washington damages rules apply.**

4           Next, Allianz suggests the Court should apply Ohio law to determine whether

5    KAG can establish compensatory damages. Dkt. 20 at 7. It does not spend much time

6    analyzing the issue under Ohio law, nor does it argue affirmatively that Ohio laws and

7    Washington laws conflict. Rather, Allianz asserts "the analysis is more nuanced, but the

8    result in this case is the same." *Id.* at 23 (citing *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d

9    397, 402 (1994)). The Court declines to pursue a conflict of laws analysis when Allianz

10   itself does not. Washington law applies.

11   **B.**      **Allianz had a duty to defend because the policy conceivably covered the Soundkeeper complaint.**

12          KAG contends the policy conceivably covered the allegations in Soundkeeper's

13   underlying complaint, and that Allianz is bound by its admission that there was "potential

14   coverage" in its February 2024 letter. Dkt. 13 at 6–7. Allianz maintains the prior

15   knowledge and intentional noncompliance exclusions rendered coverage inconceivable.

16   Dkt. 16 at 21–27. It contends that violations of the Clean Water Act are by their very

17   nature intentional and illegal, and therefore excluded by the policy. *Id.* at 22. Allianz also

18   argues its reservation of rights letter did not mandate a defense, but instead merely

19   "shared information" about the policy. *Id.* at 29. Finally, it argues KAG has not shown it

20   satisfied the deductible as required for a defense. *Id.* at 33.

21

22

1    First, based on the "eight corners" of the policy and the complaint, Allianz had a duty to

2    defend KAG. *Xia*, 188 Wn.2d at 182. A primary purpose of KAG's environmental

3    insurance policy was to protect against pollution-related costs. Dkt. 15-1 at 42. On its

4    face, that is exactly what the Soundkeeper complaint alleged: that KAG discharged

5    stormwater pollutants in excess of permitted levels into Tacoma's waterways. Dkt. 15-2.

6    The complaint does not reference the prior violations or the 2020 consent order, nor does

7    it reference the Tacoma facility manager's reports of no rain in Tacoma. KAG plausibly

8    argues the unlawful or illegal exclusion act can only apply to criminal conduct,

9    particularly in the context of an environmental liability policy. Soundkeeper's complaint

10   does not allege any criminal conduct. It does not make sense to treat KAG's *alleged*

11   violations as *per se* illegal when they were not yet proven. Washington law requires such

12   ambiguity to be construed in favor of the insured. *Woo*, 161 Wn.2d at 53. Even so,

13   Allianz's initial duty to defend attached before it investigated the claim and considered

14   facts extrinsic to the complaint. *Id.* at 54. As Allianz conceded in its February reservation

15   of rights letter, the policy "potentially" covered the Soundkeeper complaint. Dkt. 1-1 at

16   123.

17         Nor is the Court persuaded by Allianz's remaining arguments. Washington law is

18   clear that a reservation of rights must be followed by a declaratory action if the insurer "is

19   uncertain of its duty to defend." *Woo*, 161 Wn.2d at 54. And whether KAG met its

20   deductible is extrinsic to the complaint and does not alter Allianz's initial duty to defend.

21

22

The Court concludes Allianz owed KAG a duty to defend against the Soundkeeper action as a matter of law. KAG's motion for summary judgment on this issue is **GRANTED**.

**C.    Allianz breached its duty to defend in bad faith.**

There is no question that Allianz breached its duty to defend. Allianz concedes that it did not defend KAG's claim, and that it failed to pay KAG's legal expenses for defending Soundkeeper's suit. *See* Wymer Decl., Dkt. 15 at 2; Graff Decl., Dkt. 14-6 at 2. Not defending a potentially covered action is a breach of the insurer's duty to defend. *Truck Ins. Exchange*, 147 Wn.2d at 761.

The parties disagree on whether the breach occurred in bad faith. KAG argues that Allianz acted unreasonably in not providing a defense, especially after Allianz admitted the claim was "potentially covered." Dkt. 13 at 15. It argues Allianz "put its own financial ahead of its insured's interest" in bad faith. *Id.* at 14–15 (citing *Am. Best Food v. Alea London, Ltd.*, 168 Wn.2d 398, 413 (2010)). Allianz responds its "coverage determination was reasonable, and no separate harm resulted from any alleged additional errors." Dkt. 16 at 30–31. It argues that it "reasonable minds could differ regarding whether Allianz subjectively or objectively believed the coverage was owed within the four corners of the Soundkeeper Complaint and later changed its mind for reasons unsupported by the Soundkeeper Complaint." *Id.* at 31.

"[A]n insurer has a duty of good faith to all its policyholders, and to succeed on a bad faith claim, a policyholder must show the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded." *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478,

485 (2003). The policyholder bears the burden of proof and must demonstrate the insurer

acted unreasonably. *Id.* at 486. The insurer may provide countering evidence that it had

"a reasonable basis for its action." *Id.* Whether an insurer acted in bad faith is a question

of fact, though the Court may resolve it on summary judgment as a matter of law "where

reasonable minds could reach but one conclusion." *Id.*

　　　　The Court agrees with KAG that Allianz breached its duty to defend in bad faith,

as a matter of law. Although Allianz's initial letter expressed concerns and included a

reservation of rights, it expressly stated there was potential policy coverage. Any insurer

doing business in Washington knows that such a concession triggers a duty to defend; to

do otherwise is unreasonable and operating in bad faith.

　　　　There is no reasonable interpretation of its policy that justifies its failure to defend

and file a declaratory judgment action. Allianz's proffered explanation, that it "changed

its mind" after considering facts outside the Soundkeeper complaint, is not a reasonable

explanation for its initial failure to defend. Dkt. 16 at 31. The law does not permit an

insurer to use extrinsic evidence to deny its duty to defend. *Truck Ins. Exchange*, 147

Wn.2d at 761. In declining to defend KAG, Allianz "assume[d] the risk it may have

breached its duty to defend or committed bad faith." *Nat'l Sur. Corp. v. Immunex Corp.*,

176 Wn. 2d 872, 885 (2013).

　　　　Allianz's failure to defend KAG was unreasonable and in bad faith. KAG's

summary judgment motion is **GRANTED**.

**D.    The Soundkeeper settlement can serve as the measure of KAG's damages so long as it was reasonable.**

Allianz argues KAG cannot establish compensable damages. Dkt. 20 at 6. It argues the Soundkeeper settlement cannot serve as KAG's measure of damages because there was no reasonableness hearing before the consent decree was signed. *Id.* at 24–25 (citing RCW 4.22.060). It also argues the damages arising from the Soundkeeper complaint fall outside the policy's coverage and therefore were not proximately caused by any tort or contract breach by Allianz." *Id.* at 25–27.

In general, an insurer that fails to defend is liable for "(1) the amount of expenses, including reasonable attorney fees the insured incurred defending the underlying action, and (2) the amount of judgment entered against the insured." *Kirk*, 134 Wn.2d at 561. When the insurer fails to defend in bad faith, there is a rebuttable presumption of harm, "because an insured should not be required to prove what might have happened had the insurer not breached its duty to defend in bad faith; that obligation rightfully belongs to the insurer who caused the breach." *Id.* at 563 (citing *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 390 (1992)). Because the insured in such circumstances "did not receive the benefit of the bargain," an insurer who acts in bad faith is estopped from arguing the claim falls "outside the scope of the contract." *Id.* at 563–64.

There are three parts to KAG's potential compensatory damages from the underlying suit: (1) KAG's own defense costs, (2) KAG's payment of Soundkeeper's attorneys' fees, and (3) the $350,000 payment to the fishery.

1      Allianz also asserts that RCW 4.22.060 required the Court to approve the

2  settlement payment to the fishery. Dkt. 20 at 24 (citing *Water's Edge Homeowners Ass'n*

3  *v. Water's Edge Assocs.*, 152 Wn. App. 572, 596 (2009)). RCW Chapter 4.22 concerns

4  "contributory fault" and the impact of settlements on potentially or allegedly jointly and

5  severally liable defendants. RCW 4.22.060 requires a settling party in such cases to give

6  notice "to *all other parties* and the court." (Emphasis added). A settlement between an

7  insured and the underlying plaintiff must also be reasonable where it involves an

8  insured's consent judgment and an assignment of rights against his insurer, in exchange

9  for a covenant not to execute on the insured's assets. This is because "a covenant not to

10  execute raises the specter of collusive or fraudulent settlements, the limitation on an

11  insurer's liability for settlement amounts is all the more important. A carrier is liable only

12  for reasonable settlements that are paid in good faith." *Besel v. Viking Ins. Co. of Wis.*,

13  146 Wn.2d 730, 736 (2002) (citing *Evans*, 40 Wn.2d 614, 628 (1952)).

14      Allianz's reliance on RCW 4.22.060 fails. Allianz was not a party to the

15  underlying lawsuit. The Soundkeeper suit does not appear to have involved contributory

16  fault, and there is no evidence and no argument that KAG and Soundkeeper settled

17  collusively or in bad faith. To the contrary, KAG invited Allianz to participate in the

18  mediation, but Allianz did not do so. Dkt. 15 at 2. In any event, it is not too late for this

19  Court to evaluate the reasonableness of KAG's underlying settlement with Soundkeeper.

20  *See Howard v. Royal Specialty Underwriting, Inc.*, 121 Wn. App. 372, 377–79 (2004),

21  *review denied*, 153 Wn.2d 1009 (2005) (leaving open the timing of reasonableness

22  hearings such that they may be conducted in the "damages phase of [a] bad faith action").

1    Finally, Allianz is estopped from arguing Soundkeeper's suit is not covered by the

2    policy. *Kirk*, 134 Wn.2d at 563–64. Its argument that the settlement is not a covered loss

3    similarly fails. An insurer that acts in bad faith is "'in no position to argue the steps the

4    insured took to protect himself [or herself] should inure to the insurer's benefit.'" *Besel*,

5    146 Wn.2d at 737 (quoting *Greer v. Nw. Nat'l Ins. Co.*, 109 Wn.2d 191, 204 (1987)).

6    This principle has particular application here, where Allianz declined to participate in the

7    mediation. In any event, the policy covered "clean-up costs," including restoration costs,

8    arising from a pollution condition. Dkt. 15-1 at 10, 60–61. The Soundkeeper settlement

9    required KAG to pay the Puyallup Tribal Fisheries, a restoration project in the

10    Commencement Bay watershed. The Soundkeeper complaint alleged KAG discharged

11    polluting stormwater into the same waterbody. The settlement conceivably constitutes a

12    restoration cost arising out of KAG's alleged pollution into Commencement Bay.

13    Allianz's motion on compensatory damages is **DENIED**.

14  **E.    KAG's IFCA and CPA claims remain under Washington law.**

15    Finally, Allianz moves to dismiss KAG's IFCA and CPA claims because "Ohio

16    law governs" this case. Dkt. 20 at 28–29. It does not argue there are any conflicts

17    between Ohio and Washington law on the IFCA and CPA claims, but instead jumps to

18    analyzing which state has the most significant relationship to the parties and claims. *Id.*

19    As explained above, the Court will not engage in a conflict of laws analysis absent some

20    actual conflict between the states' laws. *See Polygon Nw. Co. v. Nat'l Fire & Marine Ins.*

21    *Co.*, No. C11-92Z, 2011 WL 2020749, at *4 (W.D. Wash. 2011) (analyzing conflicts

22    between Washington and Oregon law on plaintiff's IFCA and CPA claim prior to

1    applying most significant relationship test). Allianz provides no other argument for

2    dismissing KAG's IFCA and CPA claims.

3                                    **III.   ORDER**

4          KAG's motion for partial summary judgment, Dkt. 13, is **GRANTED**. The Court

5    concludes, as a matter of law, that Allianz breached its duty to defend KAG in bad faith.

6          Allianz's motion for summary judgment, Dkt. 20, is **DENIED**.

7          The parties are directed to file a Joint Status Report (JSR) in view of this Order by

8    December 22, 2025. The JSR should address what legal and factual issues remain for

9    trial, including damages, and whether and how the Court should evaluate the

10   reasonableness of the underlying settlement.

11

12         **IT IS SO ORDERED.**

13

14         Dated this 9th day of December, 2025.

15

16         _____

17         BENJAMIN H. SETTLE
           United States District Judge

18

19

20

21

22